UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
SAMANTHA RIVERA,

                Plaintiff,                            **MEMORANDUM AND ORDER**
                                                              12-CV-901 (DRH) (ARL)
           - against -

TOWN OF HUNTINGTON HOUSING
AUTHORITY, and SIELA A. BYNOE in her
capacity as Executive Director of the Town of
Huntington Housing Authority

                Defendants.
-----------------------------------------------------------X

**APPEARANCES:**

**NASSAU/SUFFOLK LAW SERVICES COMMITTEE, INC.**
Attorneys for Plaintiff
1757 Veterans Highway
Suite 50
Islandia, New York 11749
By:    Victor J. Ambrose, Esq.

**VITALE AND LEVITT, P.C.**
Attorneys for Defendants
445 Broadhollow Road
Suite 124
Melville, New York 11747
By:    Paul E. Levitt, Esq.

**HURLEY, Senior District Judge:**

       Plaintiff Samantha Rivera commenced this action on February 24, 2012 by filing a

Complaint and proposed Order to Show Cause seeking a "preliminary injunction reinstating

plaintiff to the Section 8 [Housing Assistance Payments] [P]rogram retroactive to the termination

of the subsidy." (Order to Show Cause at 1.) The parties appeared before the Court for a hearing

on May 18, 2012, after which the Court reserved decision on plaintiff's motion.[1]  For the reasons set forth below, plaintiff's motion is granted.

## BACKGROUND

Plaintiff is a forty-year-old widow and mother of three daughters.  The family moved to 3 Lowndes Ave, Apt 2B, Huntington Station, NY in 2010.  Since 2011, plaintiff has participated in the Section 8 Housing Assistance Payments Program of the United States Housing Act of 1937, as amended by the Housing and Community Development Act of 1974, codified at 42 U.S.C. § 1437f (the "Section 8 Program").  Defendant Town of Huntington Housing Authority (the "Housing Authority") is a municipal entity that monitors and administers approximately 475 vouchers for families participating in the Section 8 Program in the Town of Huntington.  (Def.'s Opp'n at 2.)  Defendant Siela A. Bynoe is the Executive Director of the Housing Authority

*The Termination of Plaintiff's Benefits*

On April 26, 2011, plaintiff's daughter Cristal Rivera ("Cristal"), then 22 years old, was riding as a passenger in an automobile driven by another young woman.  The vehicle was stopped by police officers driving an unmarked car.  Cristal does not know why the vehicle was pulled over.  (Aff. of Cristal Rivera, dated Feb. 23, 2012 ("Cristal Aff.") ¶ 2.)  Cristal did not have identification, and was ordered out of the vehicle.  (*Id.* ¶ 3.)  She complied, leaving her pocketbook on the car seat.  (*Id.*)  The police officers "searched [her] pocketbook and removed

---

[1]  A hearing was originally scheduled for March 15, 2012.  At the request of the parties, the hearing was adjourned twice.  The parties stipulated that, in the interim, "plaintiff shall make payment to defendant for her use and occupancy of the residence . . . Payments by plaintiff shall represent her former share of rent."  (Docket No. 7.)  At the conclusion of the May 18, 2012 hearing, defendants agreed that they would not take any action to remove plaintiff from her residence until the Court issued a decision on plaintiff's motion.

2

an envelope with a white substance in it." (*Id.*) Cristal "told them that it was not [hers], that [she] did not know what it was." (*Id.* ¶ 4.) She "was told," presumably by one or more of the police officers at the scene, "that [the substance] was cocaine." (*Id.*) In response, she "told the officers that [she did] not use drugs." (*Id.*)

At that time, Cristal was arrested and charged with Criminal Possession of a Controlled Substance in the Seventh Degree, (*see* Am. Compl., Ex. A at 2), which is a Class A Misdemeanor. *See* N.Y. Penal Law § 220.03. She did not tell her mother (plaintiff) about the arrest. (Cristal Aff. ¶ 6.)

On December 28, 2011, the Housing Authority notified plaintiff that her Section 8 Program benefits would be terminated as of January 31, 2012 (the "Termination Notice"). (Am. Compl., Ex. A.) The stated reason for the termination was: "Cristal Rivera arrested 4/26/2011 Am 7th degree - criminal possession of a controlled substance." (*Id.* at 1.) The Termination Notice stated that, as a result of Cristal's arrest, plaintiff was in violation of 24 C.F.R. § 982.551(a), (b)(1); 24 C.F.R. §§ 982.552(a)(1), (c)(1)(i); and 24 C.F.R. § 982.553(2)(c). The Termination Notice further advised plaintiff of her right to request an informal hearing within ten days to contest the termination.

Two documents were attached to the Termination Notice. The first was a document entitled "Criminal Disposition Information," which reflected Cristal's arrest on April 26, 2011. (Am. Compl., Ex. A at 2.)[2] The second document was a copy of the regulations that were cited

---

[2] The "Criminal Disposition Information" also reflected that on November 27, 1996, plaintiff pled guilty to a charge of Assault in the Second Degree. (Am. Compl., Ex. A at 3.) It does not appear that this guilty plea had any impact on the Housing Authority's decision to terminate plaintiff's Section 8 benefits.

3

in the Termination Notice. Of particular relevance here is 24 C.F.R. § 982.553(c), which permits a housing authority to terminate an individual's Section 8 benefits "for criminal activity by a household member . . . if the [housing authority] determines, based on a preponderance of the evidence, that the household member has engaged in the activity, regardless of whether the household member has been arrested or convicted for such activity." 24 C.F.R. § 982.553(c).

*The Hearing*

At plaintiff's request, a hearing was held on January 20, 2012 before Adam Morelli, a Hearing Officer designated by defendants. (Aff. of Samantha Rivera, dated Feb. 23, 2012 ("Samantha Aff.") ¶ 4.) Plaintiff and Cristal attended the hearing, along with attorney Ira Kaplan, Esq.,[3] and Gerald Goldberg, a family friend. (*Id.* ¶ 5.) The Housing Authority was represented by Angela Roma, a Section 8 Coordinator. (Aff. of Angela Roma, dated April 19, 2012 ("Roma Aff.") ¶¶ 1, 2.)

Cristal testified as to the circumstances of the arrest, as described above. (Cristal Aff. ¶ 12.) The Hearing Officer asked Cristal whether she "would pass a drug test if one was given on that day." (*Id.*) Cristal answered in the affirmative. (*Id.*) Kaplan testified that he intended to seek dismissal of the criminal charge against Cristal at the next court appearance. (*Id.* ¶ 13.) Goldberg testified that he knew plaintiff's family and knew that Cristal did not use drugs. (*Id.*) Plaintiff testified that she was unaware of Cristal's arrest until she received the Termination Notice in December 2011. (Samantha Aff. ¶ 7.) For the defendant, Roma presented as evidence the Termination Notice and Criminal Disposition Information record. (Roma Aff. ¶ 7.)

---

[3] Kaplan, who appeared on plaintiff's behalf during the hearing, also served as Cristal's criminal defense attorney.

On January 21, 2012, the Hearing Officer issued a written decision denying plaintiff's request that he overturn the Housing Authority's decision to terminate plaintiff's benefits. (Roma Aff., Ex. B.) In the three-paragraph decision, the Hearing Officer began by reiterating that plaintiff's benefits were terminated because Cristal "was arrested on April 26, 2011 for 7th degree possession of a controlled substance." (*Id.*) Then, the Hearing Officer cited to two inapplicable regulations that deal with standards for admission into the Section 8 Program. (*See id.* (citing 29 C.F.R. § 982.553(a)(1)(ii) and (a)(2)(ii).) The Hearing Officer concluded that: "Based on testimony given during the hearing, a quantity of cocaine was found in your daughter's purse by police on April 26, 2011. As a result, I cannot overturn the Housing Authority's decision to terminate your benefits at this time." (*Id.*)

On April 3, 2012, Cristal "pled guilty to disorderly conduct" and paid a fine. (Am. Compl. ¶ 22.) Plaintiff asserts that "no allocution regarding possession of any controlled substance was given" and that under the New York Penal Law, "disorderly conduct is a violation and not a crime." (*Id.*) That assertion is not controverted by defendants.

*The Amended Complaint*

In the Amended Complaint, plaintiff challenges two "official policies" purportedly adopted by the Housing Authority: (1) the policy "to refuse to allow a Section 8 participant, or counsel for a participant, to tape [record] the [administrative] hearing, insisting that they will refuse to proceed with a hearing, if a tape recorder is activated," (Am. Compl. at pp. 2-3; *see also id.* ¶ 8), and (2) the policy "to send a termination notice to a Section 8 participant as soon as defendants learn that a family member has been arrested, regardless of [whether defendants have] sufficient evidence that the family member has engaged in criminal activity," (*id.* ¶ 8), which has

5

the effect of "placing the burden of persuasion on participants . . . to disprove that a family member has engaged in the criminal conduct for which the arrest was effected." (*Id.* ¶ 63.)

Plaintiff asserts due process claims under the Fourteenth Amendment, and further claims that defendants violated 42 U.S.C. §§ 1437f, 1437d(k) and the regulations governing the Section 8 Program. In the Amended Complaint, plaintiff asks the Court to reverse the defendants' decision to terminate plaintiff's Section 8 benefits, restore those benefits, and award plaintiff costs and attorneys' fees.

## DISCUSSION

### I. *Legal Standard for a Preliminary Injunction*

To obtain a preliminary injunction, a movant must demonstrate: "(1) irreparable harm in the absence of the injunction and (2) either (a) a likelihood of success on the merits or (b) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in the movant's favor." *Merkos L'Inyonei Chinuch, Inc. v. Otsar Sifrei Lubavitch, Inc.*, 312 F.3d 94, 96 (2d Cir. 2002) (internal citations and quotation marks omitted). Here, as plaintiff acknowledges, she seeks to do more than maintain the status quo – she "seeks to reinstate her Section 8 subsidy, previously terminated." (Pl.'s Mem. at 2.) Thus, under the second prong, a heightened showing of "clear or substantial likelihood of success" is required. *See Hoblock v. Albany Cnty. Bd. of Elections*, 422 F.3d 77, 97 (2d Cir. 2005).

As to the first prong, plaintiff contends, and defendants do not dispute, that without her Section 8 benefits she cannot afford her rent and, thus, absent the issuance of a preliminary injunction, plaintiff and her family face the prospect of homelessness. (Pl.'s Mem. at 3.)

6

Plaintiff has sufficiently shown that she will "suffer actual and imminent harm if injunctive relief is not granted, and such harm would not be remedied by monetary damages." *See Estevez v. Cosmopolitan Assocs. LLC*, 2005 WL 3164146, at *3 (E.D.N.Y. Nov. 28, 2005) (citing *McNeill v. N.Y. City Hous. Auth.*, 719 F. Supp. 233, 254 (S.D.N.Y. 1989) ("The threat of eviction and the realistic prospect of homelessness constitute a threat of irreparable injury, and satisfies the first prong of the test for preliminary injunctive relief.")).

The Court turns, then, to the question of whether plaintiff has shown a "clear or substantial likelihood of success" on the merits.

## II. *Procedural Due Process Claim*

A plaintiff may assert a cause of action pursuant to Section 1983 against any "person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . ., subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws . . . ." 42 U.S.C. § 1983. Municipalities and other local governmental units are considered "persons" subject to suit under Section 1983. *See Monell v. Dep't of Soc. Servs. of the City of N.Y.*, 436 U.S. 658, 690 (1978).

"In order to assert a violation of procedural due process rights, a plaintiff must 'first identify a property right, second show that the [government] has deprived him of that right, and third show that the deprivation was effected without due process.'" *DeFabio v. E. Hampton Union Free Sch. Dist.*, 658 F. Supp. 2d 461, 487 (E.D.N.Y. 2009) (quoting *Local 342, Long Island Pub. Serv. Emps., UMD, ILA, AFL-CIO v. Town Bd. of Huntington*, 31 F.3d 1191, 1194 (2d Cir. 1994)) (alteration in the original).

With respect to the first step, the parties do not dispute that plaintiff had a protected property interest in her Section 8 housing benefits. *See Rios v. Town of Huntington Hous. Auth.*, 2012 WL 1185941, at *6 (E.D.N.Y. Apr. 10, 2012) (finding, for purposes of preliminary injunction application, that plaintiff had a "constitutionally protected interest" in her Section 8 benefits) (collecting cases). The parties also agree that defendants' termination of plaintiff's Section 8 benefits constituted a deprivation of plaintiff's protected property interest. Thus, the Court's ultimate determination hinges on the question of what process is due to plaintiff as a Section 8 Program participant whose benefits were terminated. *See Rios*, 2012 WL 1185941 at *6.

### A. *The Process Due to Plaintiff*

#### 1. **Relevant Legal Framework**

"The Due Process Clause does not protect against all deprivations of constitutionally protected interests in life, liberty, or property, 'only against deprivations without due process of law.'" *Rivera-Powell v. N.Y. City Bd. of Elections*, 470 F.3d 458, 464 (2d Cir. 2006) (quoting *Parratt v. Taylor*, 451 U.S. 527, 537 (1981)). "To determine whether a constitutional violation has occurred, it is necessary to ask what process the State provided, and whether it was constitutionally adequate." *Id.* at 465 (quoting *Zinermon v. Burch*, 494 U.S. 113, 126 (1990)) (internal alteration and quotation marks omitted).

As the Second Circuit has recognized, "in evaluating what process satisfies the Due Process Clause, 'the Supreme Court has distinguished between (a) claims based on established state procedures and (b) claims based on random, unauthorized acts by state employees.'" *Id.* (quoting *Hellenic Am. Neighborhood Action Comm. v. City of New York ("HANAC")*, 101 F.3d

877, 880 (2d Cir. 1996). "When the state conduct in question is random and unauthorized, the state satisfies procedural due process requirements so long as it provides meaningful post-deprivation remedy." *Id.* (citing *Hudson v. Palmer*, 468 U.S. 517, 533 (1984) ); *see also Reed v. Medford Fire Dep't, Inc.*, 806 F. Supp. 2d 594, 611 (E.D.N.Y. 2011). Thus, if the Court construes plaintiff's allegations as concerning "a random act by a state actor," then the availability of a post-deprivation remedy, such as an Article 78 proceeding, "is dispositive" of her claims. *Rios*, 2012 WL 1185941 at *7.

If, on the other hand, the complained-of "deprivation is pursuant to an established state procedure, the state can predict when it will occur and is in the position to provide a pre-deprivation hearing." *Rivera-Powell*, 470 F.3d at 465 (citing *HANAC*, 101 F.3d at 880). In that case, "'the availability of post-deprivation procedures will not, *ipso facto*, satisfy due process.'" *Id.* (quoting *HANAC*, 101 F.3d at 880). Thus, if plaintiff's allegations concern "the state's established pre-deprivation procedures . . . then a federal cause of action may lie because the availability of a post-deprivation remedy in the form of an Article 78 proceeding is irrelevant." *Rios*, 2012 WL 1185941 at *7.

### 2. Plaintiff's Allegations Concern the Housing Authority's Established Pre-Deprivation Procedures

The Second Circuit has noted that "[t]he distinction between random and unauthorized conduct and established state procedures[ ] is not clear cut." *Rivera-Powell*, 470 F.3d at 465. "However, as a general rule, conduct cannot be considered random and unauthorized . . . if: (1) the state delegated to those actors the power and authority to effect the very deprivation complained of . . . and the concomitant duty to initiate the procedural safeguards set up by state

9

law, or (2) the deprivation resulted from the acts of high-ranking officials who are ultimate decision-makers and have final authority over significant matters." *Reed*, 806 F. Supp. 2d at 611 (internal quotation marks and alterations omitted).

Plaintiff asserts that she has raised a challenge to the Housing Authority's policy of terminating a participant's Section 8 benefits upon the occurrence of an arrest of a participant's family member, even when the Housing Authority is "without sufficient evidence that the family member [actually] engaged in criminal activity." (Reply Mem. at 3 (quoting Am. Compl. ¶ 62).) During the hearing, defendants did not take a definitive position one way or the other as to how the Court should construe plaintiff's allegations. The Court concludes that plaintiff's Amended Complaint challenges an established state procedure: i.e., the Housing Authority's practice of terminating a Section 8 participant's benefits based solely upon its learning of an arrest of a participant's family member.

The remaining question for the Court, therefore, is whether plaintiff "was afforded all of the pre-deprivation process she was due under Supreme Court precedent, as well as applicable federal statutes and regulations." *Rios*, 2012 WL 1185941 at *7 (citing *Rivera-Powell*, 470 F.3d at 468).

### 3. Whether Plaintiff was Afforded Adequate Pre-Deprivation Process

"[C]ertain procedural safeguards are required" before a plaintiff's protected property interest in Section 8 benefits may be terminated. *Falkowski v. N. Fork Hous. Alliance, Inc.*, 2009 WL 3174029, at *2 (E.D.N.Y. Sept. 30, 2009). As set forth by the Supreme Court in *Goldberg v. Kelly*, due process requires: (1) timely and adequate notice stating the reason for termination, (2) an opportunity to appear at a pre-termination hearing, to present evidence, and to confront and

10

cross-examine witnesses, (3) a right to representation by counsel during the hearing, (4) a post-hearing decision that rests "solely on the legal rules and evidence adduced at the hearing," which is demonstrated by a statement of the decisionmaker's "reasons for his determination" and an indication of "the evidence he relied on," and (5) an impartial decisionmaker. *Goldberg v. Kelly*, 397 U.S. 254, 266-71 (1970).[4]

Here, the fourth *Goldberg* element is at issue. Plaintiff asserts that the evidence adduced at the hearing was insufficient to permit defendants to establish, by a preponderance of the evidence, that Cristal actually possessed cocaine at the time of her arrest. While "[t]he Second Circuit has not yet articulated a clear standard for the level of deference a district court must show an agency's factfinding when terminating public housing assistance," at least one court within the Circuit has adopted the standard set forth by the Fourth Circuit in *Clark v. Alexander*, 85 F.3d 146 (4th Cir. 1996). *See Boykins v. Cmty. Dev. Corp. of Long Island*, 2011 WL 1059183, at *5 (E.D.N.Y. Mar. 21, 2011). In *Clark*, the Fourth Circuit determined that:

> The level of deference shown to the factfindings of a hearing officer is not absolute but it is significant. The regulations governing hearings state that factual findings must be based on a preponderance of the evidence presented at the hearing. Accordingly, to insure compliance with federal law, the reviewing court must be satisfied that the hearing officer's conclusions are supported by substantial evidence.

*Clark*, 85 F.3d at 151-52 (internal citations omitted). "'Substantial evidence,' in turn, is 'more than a mere scintilla' and is 'such relevant evidence as a reasonable mind might accept as

---

[4] The criteria set forth in *Goldberg* are "essentially parrot[ed]" in the United States Housing Act, 42 U.S.C. § 1437d(k), and the applicable HUD regulations, 24 C.F.R. § 982.555(e). *Rios*, 2012 WL 1185941 at **10-11 (citing *Clark v. Alexander*, 85 F.3d 146, 150 (4th Cir. 1996) ("Federal regulations set out the basic procedural requirements of informal hearings in almost literal compliance with *Goldberg*.").)

11

adequate to support a conclusion.'" *Boykins*, 2011 WL 1059183 at *5 (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

The parties agree that the evidence before the Hearing Officer on the question of whether the substance found in Cristal's purse was cocaine consisted of the fact of her arrest as well as her hearing testimony that: (1) she told the police officers who pulled over the vehicle that the substance in her purse "was not mine, that I did not know what it was," (2) she "was told that it was cocaine," and (3) she "told the officers that I do not use drugs." (Cristal Aff. ¶ 4.)[5]

First, the fact that plaintiff was arrested and that the charges remained pending as of the hearing date does not evidence that the she possessed cocaine. Moreover, Cristal's testimony does not constitute substantial evidence to support the Hearing Officer's determination that the substance found in Cristal's purse was, in fact, cocaine. It is well-established that "agencies can use hearsay evidence to meet their evidentiary burden." *Boykins*, 2011 WL 1059183 at *6 (citing *Richardson*, 402 U.S. at 402-06 and *Falkowski*, 2009 WL 3174029 at **3, 12). But even if accepted for the truth of the matter asserted, Cristal's testimony evidences only that an individual, presumed to be an unidentified police officer, told her – moments before her arrest – that a substance found in her purse was cocaine. There is no indication as to the basis for this individual's statement to Cristal (i.e., field tests of the substance, the individual's training or on-the-job experience). There is also no evidence that this individual's statement was corroborated

---

[5] As noted above, the Hearing Officer's written decision states only that his determination was based upon "testimony given during the hearing." (Roma Aff., Ex. B.) During the May 18, 2012 hearing, defendants' counsel stated that the Hearing Officer was referring to the testimony given by Cristal. Although the Court does not have any transcription of Cristal's testimony, defendants have not objected to Cristal's description of her hearing testimony as set forth in her Affidavit. Accordingly, the Court presumes that Cristal's Affidavit contains a true and accurate representation of her testimony during the hearing.

by subsequent laboratory tests evidencing that the substance was cocaine. Finally, Cristal never admitted to possessing cocaine and, even in connection with her subsequent guilty plea to a charge of disorderly conduct, she never allocuted to possession of a controlled substance.

Defendants have not asserted that the Hearing Officer relied on any other record evidence in rendering his determination that "a quantity of cocaine was found in [Cristal's] purse." (*See* Roma Aff., Ex. B.) Thus, the Court concludes that this determination was not supported by substantial evidence, and, accordingly, it is not entitled to deference. Overall, the record evidence did not establish by a preponderance of the evidence that Cristal engaged in "criminal activity" in connection with the April 26, 2011 incident. *See* 24 C.F.R. § 982.553(c). Thus, plaintiff has shown a clear or substantial likelihood of success on the merits of her due process challenge to the sufficiency of her pre-termination hearing.

### III. Bond Requirement

Defendants have not requested that plaintiff be required to post a bond pursuant to Rule 65(c), which provides that a "court may issue a preliminary injunction . . . only if the movant gives security *in an amount that the court considers proper* to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c) (emphasis added). The Second Circuit has determined that the text of the Rule "indicates that the District Court is vested with wide discretion in the matter of security and it has been held proper for the court to require no bond where there has been no proof of likelihood of harm." *Doctor's Assocs., Inc. v. Stuart*, 85 F.3d 975, 985 (2d Cir. 1996) (quoting *Ferguson v. Tabah*, 288 F.2d 665, 675 (2d Cir. 1961)).

Here, defendants have made no showing that they will or are likely to suffer any actual

harm absent the posting of a bond by plaintiff. *See id.*; *N.Y. City Triathlon, LLC v. NYC Triathlon Club, Inc.*, 704 F. Supp. 2d 305, 345 (S.D.N.Y. 2010) (declining to require bond when defendant "has not demonstrated it will likely suffer any harm absent the posting of a bond, and the likelihood of success on the merits is overwhelming"); *Heisman Trophy Trust v. Smack Apparel Co.*, 595 F. Supp. 2d 320, 329 (S.D.N.Y. 2009) (declining to require bond when opposing party did not request one and had made no showing of harm); *Interlink Int'l Fin. Servs., Inc.*, 145 F. Supp. 2d 312, 316 (S.D.N.Y. 2001) (declining to require security for certain mandatory provisions of a TRO when the "assumed item of damages can only be described as speculative and conjectural"). Moreover, it seems evident that plaintiff, a recipient of Section 8 benefits and a litigant proceeding *in forma pauperis*, does not have sufficient funds to post a bond. *See Lopez v. Delta Funding Corp.*, 1998 WL 1537755, at *15 (E.D.N.Y. Dec. 23, 1998) (finding plaintiffs, as "indigent persons," were not required to post bond under Rule 65(c)); *Doe v. Perales*, 782 F. Supp. 201, 206 (W.D.N.Y. 1991) ("Since plaintiffs apparently do not have sufficient resources to post a security bond, they would be precluded from maintaining this action if such a bond were required.").

Under these circumstances, and in its discretion, the Court hereby dispenses with the bond requirement.

## CONCLUSION

Plaintiff has demonstrated that she is entitled to the issuance of a preliminary injunction reinstating her to the Section 8 Program, retroactive to the January 31, 2012 termination of her benefits. Accordingly, defendants are directed to take the actions necessary to accomplish this result.

**SO ORDERED.**

Dated: Central Islip, New York
      May 29, 2012

                                                 /s/
                                          Denis R. Hurley
                                          Unites States District Judge